IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICALIS (MICHAEL) | : | CIVIL ACTION |
| PAZIANAS, M.D., et al. | : | |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE INSURANCE COMPANY | : | NO. 16-2018 |

MEMORANDUM

Dalzell, J.                                                           July 18, 2016

I.      **Introduction**

We consider here defendant Allstate Insurance Company's ("Allstate") motion for

judgment on the pleadings. Plaintiff Michalis (Michael) Pazianas, M.D., brings a breach of

contract claim against his insurer, Allstate, for refusing to compensate him under the terms of his

homeowners insurance policy for losses he incurred as the result of water damage from burst

pipes. We have jurisdiction pursuant 28 U.S.C. § 1332.

Since both parties presented matters outside the pleadings that we will not exclude, we

will treat this motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) as a motion for

summary judgment under Fed. R. Civ. P. 56. As there are no disputes of material fact to preclude

summary judgment, and the undisputed material facts demonstrate that Pazianas's policy with

Allstate does not cover the losses for water damage, we will grant Allstate's motion.

II.     **Standard of Review**

A party may move for judgment on the pleadings after the pleadings are closed, but early

enough so as not to delay trial. Fed. R. Civ. P. 12(c). We may grant judgment on the pleadings

only if the moving party clearly establishes that there are no material issues of fact to resolve and

the moving party is entitled to judgment as a matter of law. Jablonski v. Pan Am. World

Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988). We decide such motions applying the same standard as we do on a motion to dismiss under Rule 12(b)(6), granting the motion only when we are certain that no relief can be granted on any set of facts. Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186, 189 (E.D. Pa. 1998); Constitution Bank v. DiMarco, 815 F. Supp. 154, 157 (E.D. Pa. 1993). We consider the facts presented in the pleadings and inferences drawn therefrom in the light most favorable to the non-moving party. Jablonski, 863 F.2d at 291.

If, on a motion under Rule 12(c), matters outside the pleadings are presented to, and not excluded by, the Court, the motion must be treated as one for summary judgment under Rule 56, and all parties must be given a reasonable opportunity to present all of the material that is pertinent to the motion. Fed. R. Civ. P. 12(d). The benefit for the plaintiff in having a Rule 12(c) motion converted into a Rule 56 motion is that, in addition to accepting the plaintiff's factual allegations as true granting the plaintiff all reasonable inferences therefrom, the trial court is also precluded from granting summary judgment unless there is no genuine issue of material fact. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

In its answer and motion for judgment on the pleadings, Allstate submitted several exhibits, including Pazianas's homeowners insurance policy with Allstate, a transcript of Allstate's examination under oath of Pazianas, an independent engineering report and two supplemental reports, and Allstate's letter denying coverage for the water damage. Allstate Mot. Ex. 7. Pazianas also submitted his examination under oath as an exhibit. Pl.'s Resp. Ex. 2. Both Allstate and Pazianas make reference to these documents in their arguments, especially Pazianas's examination under oath.

Under these circumstances, where the moving party has presented substantial matters outside the pleadings and the non-moving party has incorporated those matters in its response, it is appropriate to treat the ostensible Rule 12(c) motion as a Rule 56 motion.

Fed. R. Civ. P. 56(a) provides:

> A party may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party moving for summary judgment bears the initial burden of informing the district court of the basis for its argument that there is no genuine issue of material fact by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted). If the moving party meets this initial burden, then the non-moving party must show via submissions beyond the pleadings that there are genuine factual issues for trial. Id. at 324. The non-moving party must respond with facts of record that contradict the facts identified by the moving party and may not rest on mere denials. Id. at 321 n.3.

There is a genuine issue of material fact only when there is sufficient evidence such that a reasonable juror could find for the party opposing the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (explaining further that a mere scintilla of evidence is insufficient). Material facts are those that would affect the outcome of the case under the governing law. Id. at 248. The Court may not make credibility determinations or weigh the evidence and must draw all reasonable inferences in favor of the non-moving party. Reeves v. Sanderson Plumbing Prods.,

Inc., 530 U.S. 133, 150 (2000); Amour v. County of Beaver, Pa., 271 F.3d 417, 420 (3d Cir. 2001). Our function is to determine whether there are genuine issues for trial, and we may not prevent a case from reaching a jury simply because we favor one of several reasonable views of the evidence. Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999) (citing Anderson, 477 U.S. at 249).

### III.    **Factual Background**

Allstate issued Pazianas a homeowners insurance policy that covered Pazianas's house at 10 Hidden Springs Circle, Newtown Square, Pennsylvania (the "Property"). Am. Compl. ¶ 3. See also Am. Compl. Ex. E (copy of renewal form for Pazianas's policy indicating the Property was covered from July 30, 2014 through July 30, 2015). On or about February 5, 2015, the Property sustained water damage in excess of $50,000.00. Id. at ¶ 4. Pazianas promptly notified Allstate of the damage. Id. at ¶ 5. Allstate has refused to pay Pazianas under the policy. Id. at ¶ 7.

Allstate raises as an affirmative defense that it has no duty to pay Pazianas under the policy because at the time of the loss the Property was unoccupied, Pazianas had failed to use reasonable care to heat the building during his absence, and Pazianas did not shut off the water supply and drain the system and appliances before leaving the Property unoccupied during the winter months. Allstate Ans. at ¶ 36.

Pazianas left the Property for England on October 10, 2014 and did not return until February 5, 2015. Examination Under Oath of Michael Pazianas (Oct. 20, 2015) ("EUO") at 13:16-24. No one was living at the Property from October of 2014 until Pazianas returned on February 5, 2015, and the house was unoccupied during that time. Id. at 45:8-14. Prior to leaving, Pazianas did not shut off the water to the Property or drain the water from the system or appliances. Id. at 62:16-21. Before he left, Pazianas set the Property's thermostat at 55 degrees

Fahrenheit and both the thermostat and furnace appeared to be working. Id. at 35:21 – 36:9. Notwithstanding the instructions in the thermostat's manual directing users to replace the batteries once a year or before leaving home for more than a month, Pazianas did not replace the batteries before departing for England nor had he replaced the batteries in more than a year when he left. Id. at 30:23 – 32:12, 103:11 – 104:12. When Pazianas left for England, he thought he might return to the Property in December, but he remained in England through January of 2015. Id. at 33:21 – 34:21.

Before Pazianas left he asked his daughter to check on the Property, but in December she informed him that she had not yet been and could not go because she was pregnant. Id. at 41:3 – 42:16. Although Pazianas knew his daughter was not checking on the Property and would not be able to, he did not ask his neighbors or anyone else to check on it. Id. at 38:3-17, 43:9-17. Even after Pazianas realized he would not be returning to the Property in December, he did not arrange for anyone to check on the Property. Id. at 40:4-21.

When Pazianas returned to the Property on February 5, 2015, the heat was off, the thermostat screen was blank, and water was flowing from the ceilings in the laundry and living rooms. Id. at 47:4-34, 52:4-9. After Pazianas replaced the batteries in the thermostat, it turned back on. Id. at 52:10-13, 55:16-25. Pazianas's plumber told him that the water damage was caused by pipes freezing in the garage and living room and then bursting. Id. at 51:17-24, 52:2-3.

According to Allstate's independent forensic engineering report, the multiple bursting of several pipes in the Property could only have been caused by freezing. Engineering Report issued by Fredric M. Blum, Forensic Mechanical Engineer, Paul Zamrowski Associates, Inc. (May 7, 2015) at 1. The Property has a gas-fired warm air furnace controlled by a battery-powered digital thermostat. Id. The monthly gas bills indicated that no gas was used in the

spring, summer, and fall of 2014, and monthly gas usage only rose to a very low level beginning in October of 2014. Id. at 2. The gas bills for November, December, and January show even less usage than October, and, if the heating system had been operating, monthly consumption would have risen with the decreasing temperatures. Id. Based on the utility data the engineering report concluded that the Property was unoccupied during the winter and that either the thermostat was set so low that only a slight amount of gas was used during the coldest months or the furnace used no gas and the minimal gas usage was caused by another appliance or lost through a leak. Id. The report concluded that the pipes had frozen and burst because the thermostat was either inoperative or set too low. Id. at 3.

A supplemental engineering report confirmed that without battery power the thermostat could not turn the heating system on. Supplemental Engineering Report issued by Fredric M. Blum, Forensic Mechanical Engineer, Paul Zamrowski Associates, Inc. (Nov. 9, 2015) at 1. This report confirmed that, before departing for England, Pazianas did not (1) winterize the house by closing the main water valve and draining the pipes, (2) have a low-temperature sensor added to the house alarm system, or (3) replace the thermostat batteries. Id. at 2. Water bills for the Property indicated that there was no water usage in November and December of 2014, but the January 22, 2015 bill showed that 103,800 gallons of water was used and the February 23, 2015 bill showed 164,000 gallons of water was used -- despite Pazianas turning off the water on February 5. Id. The supplemental report concluded, based on daily weather records and in light of the water bills, that the thermostat batteries probably failed between January 6th and 8th, the pipes froze a day after the batteries failed, and then the pipes thawed and burst between January 12th and 14th. Id. at 3-4. A second supplemental engineering report based on Pazianas's more comprehensive gas and electric usage records came to no new conclusions. Second Supplemental

Engineering Report issued by Fredric M. Blum, Forensic Mechanical Engineer, Paul Zamrowski

Associates, Inc. (Nov. 17, 2015) at 1-2.

Allstate denied Pazianas's request for coverage because its investigation concluded that

Pazianas had failed to use reasonable care to maintain heat in the Property and therefore the loss

was excluded under his policy. Letter from Michael Cybularz, Allstate Insurance Company, to

Property Adjustment Corporation (Dec. 30, 2015) at unnumbered p. 2.

## IV.   <u>Discussion</u>

Allstate argues that it is entitled to judgment on the pleadings because Pazianas did not

use reasonable care to maintain heat in the Property while it was unoccupied during his trip to

England. Allstate Mot. at ¶ 59. Pazianas responds that (1) there are genuine issues of material

fact to resolve at trial based on oral testimony that is subject to a credibility determination, and

(2) he exercised reasonable care by setting the thermostat at 55 degrees before he left for

England, affirmatively asking his daughter to routinely check on the Property, and intending only

to be gone for two months. Pazianas Resp. Mem. at unnumbered pp. 1-2.

In an insurance coverage dispute, the insured bears the initial burden of making a <u>prima</u>

<u>facie</u> showing that a claim falls within the policy's grant of coverage. <u>State Farm Fire & Cas. Co.</u>

<u>v. Estate of Mehlman</u>, 589 F.3d 105, 111 (3d Cir. 2009). If the insured meets that burden, then

the insurer bears the burden of demonstrating that a policy exclusion excuses it from providing

coverage. <u>Id.</u>

Where policy language is clear and unambiguous, we give effect to the language of the

contract. <u>Bateman v. Motorists Mut. Ins. Co.</u>, 590 A.2d 281, 283 (Pa. 1991). We give clear and

unambiguous terms their plain and ordinary meaning. <u>Northbrook Ins. Co. v. Kuljian Corp.</u>, 690

F.2d 368, 372 (3d Cir. 1982).

Pazianas's policy with Allstate excluded coverage for losses caused by

> Freezing of plumbing, fire protective sprinkler systems, heating or
> air conditioning systems or household appliances, or discharge,
> leakage or overflow from within the systems or appliances caused
> by freezing, while the building structure is vacant, unoccupied or
> being constructed unless you have used reasonable care to:
> a) maintain heat in the building structure; or
> b) shut off the water supply and drain the system and appliances.

Allstate Ans. Ex. A at 9.

The material facts are undisputed. The Property was unoccupied from October of 2014 through February 5, 2015. Before Pazianas left for England, he set the thermostat to 55 degrees and noted no problems with either the thermostat or heat, but he did not change the batteries in the thermostat even though the manual directed that the batteries be changed every year and before departing for more than a month. Pazianas did not shut off the water supply to the house or drain the appliances before leaving. Pazianas asked his daughter to check on the Property monthly beginning in October of 2014, but he learned in December of 2014 that she had not been to the Property and would not be able to check on it. Pazianas made no alternate arrangements to have anyone else check on the Property. Although at one point he intended to return to the Property in December of 2014, Pazianas did not return until February 5, 2015, whereupon he discovered that several pipes had burst, water was flowing freely from the ceiling, and the thermostat was off. Based on Pazianas's account, the Property's utility bills, and weather data, a forensic engineer concluded that after the thermostat's batteries had failed, there was no heat in the Property because the thermostat controlled the gas furnace. Without any heat in the Property, several pipes froze and then burst in January of 2015.

Pazianas admits, and it is not disputed, that the Property was unoccupied and that he did not shut off the water supply and drain the appliances before departing. See also Kinneer v.

8

Southwestern Mut. Fire Ass'n, 185 A. 194, 195 (Pa. 1936) (explaining the definition of

unoccupied with respect to dwelling houses in Pennsylvania). We therefore need only consider

whether Pazianas, within the meaning of his insurance policy with Allstate, used reasonable care

to maintain heat in the Property while it was vacant during his trip to England. Allstate argues

that Pazianas did not exercise reasonable care because he failed to change the batteries in his

thermostat before leaving for England and the failed thermostat led to the pipes freezing and then

bursting. Allstate Mot. at ¶ 59. Pazianas responds that he exercised reasonable care by setting the

thermostat before he left, asking his daughter to inspect the Property every month, and intending

to return in December or early January to inspect the Property himself. Pl.'s Resp. at

unnumbered pp. 4-5.

 In Pennsylvania, reasonableness is an objective standard reflecting the degree of care a

person of ordinary intelligence and prudence would commonly exercise under similar

circumstances. Materna v. Pennsylvania R.R. Co., 56 A.2d 233, 235 (Pa. 1948). When an

insurance policy imposes a duty upon an insured to maintain heat in a property, the insured

cannot delegate that duty to another by agreement with a third person. Dougherty v. Allstate

Prop. & Cas. Ins. Co., -- F. Supp. 3d --, 2016 WL 2593848, *9 (E.D. Pa. 2016) (citing Husak v.

Berkel, Inc., 341 A.2d 174, 179 (Pa. Super. Ct. 1975)).

 There is a genuine issue of material fact only when there is sufficient evidence such that a

reasonable juror could find for the party opposing the motion. Anderson, 477 U.S. at 251-52

(explaining that a mere scintilla of evidence is insufficient). Even accepting Pazianas's

allegations as true and granting him the benefit of all reasonable inferences, the undisputed

material facts demonstrate that Pazianas (1) left the Property vacant for several months in the fall

and winter, (2) made no provision for having the Property inspected during his trip to England

after he learned that his daughter would be unable to inspect the Property, (3) took no steps to ensure that the battery-operated thermostat would continue to operate for the duration of his extended absence, and (4) did not shut off the water to the Property or drain the appliances. Even accepting as true Pazianas's averments that he asked his daughter to inspect the Property in October, set the thermostat before departing, and did not intend to be away for more than two months, no reasonable juror could find that Pazianas used reasonable care to maintain heat in the Property during its vacancy. Further, although Pazianas states in a conclusory fashion that there are genuine issues of material fact to resolve at trial based upon oral testimony that is subject to a credibility determination, he does not indicate what these issues are, and the Court's decision requires no credibility determination or weighing of the evidence in light of the undisputed facts.

**V.**    **Conclusion**

We will grant Allstate's motion for judgment on the pleadings, which we have considered as a motion for summary judgment, because in light of the undisputed material facts no reasonable juror could find that Pazianas used reasonable care to maintain heat in the Property while it was vacant during his absence. An appropriate Order follows.

BY THE COURT:

   /s/ Stewart Dalzell, J.
Stewart Dalzell, J.

10